# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| BIG G EXPRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08-cv-0318 |
| | ) | |
| LEVITON MANUFACTURING COMPANY, INC.[1] | ) | Senior Judge Thomas A. Wiseman, Jr. |
| and AMERICAN INSULATED WIRE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Viewed in the light most favorable to Defendant American Insulated Wire Corp. ("AIW"), the non-movant, the evidence indicates as follows.

AIW, a business incorporated in Rhode Island with its principal place of business in Massachusetts, manufactures wire products. Plaintiff Big G, a Tennessee corporation whose principal place of business is in Tennessee, is a shipper. Sometime before March 5, 2007, AIW agreed to sell a large quantity of insulated wire to a third party (not a party to this lawsuit) located in Tennessee. On March 5, 2007, Big G dispatched its employee Joel Ulmer to AIW's facility to pick up the load of insulated wire. While Ulmer waited in the cab, two AIW loaders loaded nine wooden reels of insulated wire, each weighing over 4,000 pounds, into Big G's trailer. The reels were secured using various lengths and combinations of wooden 4' x 4's, 2' x 4's, wooden "chocks" and nails. AIW's employees were satisfied by the time they finished that the load was adequately secured and should not shift during transit. Ulmer saw the load as he was closing the door and observed that the truck looked full all the way to where the back reel was and appeared to be secured. He also testified that he was "impressed" by the efforts AIW undertook to secure the load. Ulmer closed the trailer doors and sealed the load.

Shortly thereafter, Ulmer departed AIW's facility and headed south on I-95 toward Providence, Rhode Island, a metropolitan area known for heavy, stop-and-go traffic. Within approximately fifteen minutes of leaving AIW's facility, Ulmer encountered a heavily congested area of slow-moving traffic. He

---

[1] All claims against defendant Leviton Manufacturing Company, Inc. have been dismissed without prejudice pursuant to a joint stipulation and agreed order by all parties to this action. (See Doc. No. 48.)

was intermittently tapping or "covering" his brake pedal with his right foot with little or no use of the accelerator pedal. Around this time, a vehicle driven by David Oliveira moved into the same lane in which Ulmer was traveling. Like Ulmer, Oliveira was braking more or less continuously. Ulmer, however, testified that he was trying to leave a "space cushion" of a reasonable distance between his truck and the vehicle in front of him, at least up until the time Oliveira allegedly cut in front of him.

As the two vehicles proceeded in tandem, Oliveira purportedly observed an ambulance enter I-95 from one of the off-ramps. Although he did not hear any activated sirens, he claims to have observed siren lights flashing. He apparently came to a complete stop in the middle of the interstate, allegedly to permit the ambulance safely to merge onto I-95. Behind him, Ulmer, who did not recall seeing an ambulance, was forced to come to a fairly abrupt stop in order to avoid hitting Oliveira's car. Ulmer estimates he was going about forty miles per hour at the time he had to brake hard to avoid hitting Oliveira. He did not impact Oliveira's car, and there is no suggestion in the record that Ulmer was driving negligently or at an excessive speed. (The truck did not jack-knife, and there were no skid marks on the road.) In any event, when he came to a stop, the 40,000-pound load in the trailer continued accelerating forward approximately twenty feet, breaching the front of the trailer and impacting and compressing the back of the truck cab, seriously damaging both as well as some of the wire reels. No person, fortunately, was injured. According to AIW, Oliveira cut off Ulmer without cause or justification, in heavy traffic, and then came to a full stop for no apparent reason, thereby forcing Ulmer to brake hard to avoid running over Oliveira's vehicle.

In any event, after the load-shifting occurred, Ulmer climbed out of the passenger-side window of his truck and talked with Oliveira, among others. Oliveira had heard the commotion and wood-breaking noises behind him. He gave Ulmer his business card, exchanged a few words with him, and then told him he had to leave to get to a doctor's appointment. Ulmer recalls that Oliveira was "apologetic." (Ulmer Dep. at 55.) AIW contends that there is a disputed issue of fact as to whether Oliveira was apologetic for having to leave to make it to his appointment, or apologetic for having caused the accident. AIW also insists that there is a disputed issue of fact as to whether Oliveira's act of stopping when he did, causing Ulmer to have to brake heavily, caused or contributed to the load shift.

I.      **THE MOTION FOR PARTIAL SUMMARY JUDGMENT**

A.      **Procedural Background**

After Big G filed suit against AIW, AIW amended its answer to assert a comparative negligence defense, naming David Oliveira as a potential comparative tortfeasor.  Big G now asserts that it is entitled to summary judgment disposing of that affirmative defense.  In the original Order (now withdrawn) denying the motion for partial summary judgment with respect to the comparative fault of David Oliveira, the Court found that there were disputed issues of fact as to whether David Oliveira had been negligent and as to whether his negligence contributed to the plaintiff's injury.  In its motion to revise or clarify, Big G requested that the Court resolve the "important and purely legal question regarding whether Defendant's affirmative defense of 'comparative fault' is appropriate in this action," under either Rhode Island or Massachusetts law.  (Doc. No. 96, at 1.)  Upon review of the record, the Court agreed that it was important to resolve that question and therefore granted the motion to revise or clarify.[2]  The Court also directed defendant American Insulated Wire Corp. ("AIW") to file a brief specifically addressing the question of whether the law of Rhode Island or Massachusetts applied and whether, under the applicable state law, the defense of comparative fault was barred as a matter of law.

In its response brief, AIW does not address whether Rhode Island or Massachusetts law applies but instead provides a primer of the law from both states and, although neither state's law actually appears to support its position, argues that the jury should be instructed that it may apportion fault to

---

[2] Prior to addressing the plaintiff's motion for partial summary judgment, the Court had granted AIW's motion to amend its answer to assert the defense of comparative fault against non-party David Oliveira.  The decision to grant the motion was based upon the Court's finding  that the defendant was not guilty of unreasonable delay in seeking to amend its answer, and the amendment did not pose a threat of undue prejudice to the plaintiff.  (See Doc. No. 72, Order entered Feb. 4, 2009.)  Although Big G argued, in its opposition to the motion, that AIW's proposed amendment was futile because Massachusetts has not adopted a comparative fault regime, the Court expressly declined to address that argument.  Instead, the Court observed that Big G had already filed a motion for partial summary judgment as to the proposed comparative fault defense, so the Court would presumably have the opportunity to consider the issue of futility in the context of ruling on that motion.  (Id. at 2.)

However, as the Court observed when it granted the motion to clarify, Big G's motion for partial summary judgment did not actually address the futility argument raised in its response opposing the amendment in the first instance.  Instead, Big G focused its argument entirely on the merits of the defendant's comparative fault defense, and argued on the basis of the factual record that "no rational jury could return a verdict finding . . . Oliveira liable for the damages sustained by Big G."  (Doc. No. 70, at 2.)  The Court disagreed, finding genuine issues of material fact regarding Oliveira's potential negligence and whether that negligence contributed to Big G's damages.  Big G then filed its motion for clarification in which it reiterated the argument that a comparative fault defense is improper under either Massachusetts or Rhode Island law.

Oliveira.  AIW also argues that, in the event the jury apportions any percentage of fault to Oliveira, it should be able to offset any damages awarded against by whatever percentage of fault is attributed to Oliveira.  In the alternative, AIW contends that the Court should reconsider its prior decisions denying AIW's motions to transfer the matter to the District of Rhode Island, arguing again that it will be substantially prejudiced if the matter is not transferred.  Finally, barring either of its other proposed remedies, AIW argues that the Court should permit AIW to employ the ancient, common-law device of "vouching in" Oliveira.

With the Court's permission, Big G filed a reply brief, arguing that neither Rhode Island nor Massachusetts law permits apportionment of liability to a non-party, that "vouching-in" is not appropriate under the circumstances presented here, and that AIW's response brief is not an appropriate forum for requesting that the Court reconsider its prior decisions denying AIW's motions to transfer this matter to the District of Rhode Island.

B.      Choice of Law

As an initial matter, the Court finds based on the facts outlined above that there are material factual disputes as to whether Oliveira was negligent, and as to whether his negligence caused or contributed to the accident at issue.  Specifically, there is an issue of fact as to whether Oliveira "cut off" Ulmer without cause, leaving too little space between his vehicle and the large, heavily loaded truck behind him, as to whether he braked precipitously for no apparent reason, and as to how hard Ulmer was required to brake to avoid hitting Oliveira.  Likewise, there is a disputed issue of fact as to whether the hard braking caused or contributed to the shifting of the load of wire reels, and as to whether it was foreseeable to Oliveira that cutting off a large truck could cause an accident of this type, or foreseeable generally that the truck might be cut off by other drivers, requiring its driver to brake precipitously.

The question presented here, however, is whether AIW may, under the applicable law, present as a defense the alleged negligence of Oliveira in contributing to Big G's damages.  The answer to that question depends on the application of state law.  With respect to the issue of which state's law applies, as the defendant aptly points out, the situation here involves "diverse parties whose actions are ensnared by the jurisdiction of three different states."  (Doc. No. 99, at 9.)  The choice-of-law question presented is not which state's laws might pertain to a hypothetical tort claim or third-party claim that might be asserted

by either Big G or AIW against Oliveira.  Rather, the immediate question before the Court is which state's law governs the question of whether AIW may assert, as an affirmative defense, the comparative fault of non-party Oliveira.  A federal court sitting in diversity must apply the substantive law, including choice-of-law rules, of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496 (1941); *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000).  Tennessee law therefore governs the choice-of-law-question.

Based on the facts outlined above, the parties have basically assumed from the outset of this litigation that Massachusetts substantive law applies to the plaintiff's claims (*see, e.g.*, Doc. No. 67, Def's Mem. Supp. Motion for Summ. J., at 2–3 (arguing Massachusetts law governs the plaintiff's tort and contract claims))[3], and the Court agrees.  Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflicts (1971).  *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992).  "Under this approach, a court applies the 'law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties.' "  *Id.* at 56 (quoting *Restatement (Second) of Conflict of Laws* (1971) §§ 146 and 175).  In an action for personal injury, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6[.]"  *Restatement (Second) Conflicts* § 146, 176.  While the law of the place of the injury occurred provides the default rule, "the Restatement approach allows a court to apply the law of a state that legitimately has a stronger interest in the controversy[.]"  *Hataway*, 830 S.W.2d at 59.  Thus, in determining which state's law to apply, a court should consider the following contacts:  "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered."  *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003) (quoting *Restatement (Second) Conflicts* § 145).  "[T]he court is to evaluate the[se] contacts 'according to their relative importance with respect to the particular issue,' and [ ] this is to be

---

[3] Neither party argues that Tennessee law should apply.  In its supplemental brief, filed at the Court's request, AIW discusses the comparative fault regimes of both Rhode Island and Massachusetts but appears to presume that Massachusetts law applies to the affirmative defense question.

accomplished by carefully examining the policies behind the laws of the interested states and the interests of those states in the claim." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 343 (6th Cir. 1997) (quoting *Restatement (Second) Conflicts* § 145(2)).

In the present case, the allegedly negligent loading occurred in Massachusetts at AIW's warehouse; at the time of the events at issue in this action took place, AIW's principle place of business was in Massachusetts and it was therefore a citizen of Massachusetts. The parties' relationship centered in Massachusetts because AIW rendered services to Big G in Massachusetts. The only connection Rhode Island has to the events is that the actual accident occurred a few miles over the Massachusetts state line in Rhode Island. The Court agrees that Massachusetts has the most significant relationship to the injury and that Massachusetts law therefore governs the disposition of Big G's tort claim.[4] The Court will therefore proceed to consider whether Massachusetts permits AIW to assert a comparative-fault defense or to an offset of the damages assessed by a jury based on the amount of fault attributed to a non-party.

### C.    Massachusetts' Joint-and-Several-Liability Regime

According to a leading law review article on the topic:

> Massachusetts retains the traditional principle of joint and several liability in tort cases. This means that where more than one tortfeasor has caused the plaintiff's injury, she may sue any one of them, or all of them, for her full damages. To be jointly and severally liable, tortfeasors need not act at the same time, act in concert, or agree to engage in a course of tortious conduct. So long as their independent acts contributed to causing a tortious injury, they are jointly and severally liable for it.

Joseph W. Glannon, *Liability of Multiple Tortfeasors in Massachusetts: The Related Doctrines of Joint and Several Liability, Comparative Negligence and Contribution*, 85 Mass. L. Rev. 50, 50 (2000) (hereinafter referenced as "Glannon, 85 Mass. L. Rev. at ___") (citing *Kabatchnik v. Hanover-Elm Building Corp.*, 119 N.E.2d 169, 172 (Mass. 1954); *Mitchell v. Hastings & Koch Enterprises, Inc.*, 647 N.E.2d 78, 84 (Mass. App. Ct. 1995)). Consequently, under this scheme, any one tortfeasor may be liable for the full amount of a plaintiff's damages. To use Professor Glannon's example:

> Suppose, for example, that Smith and Jones, each driving negligently, collide on Commonwealth Avenue, injuring Lopez, a passenger in Smith's car. If Lopez suffers $100,000 in personal injury damages, he may sue Jones for it. If he does, he may recover the entire $100,000 from Jones, even if the proof shows that the negligence of

---

[4] As both parties have pointed out, there are significant similarities between Rhode Island and Massachusetts tort law.

Smith also contributed to the accident. Alternatively, Lopez could sue Smith for his damages, and recover the full $100,000 from her. Lopez could also sue Smith and Jones together in a single action. If he did, and proved that the negligence of each contributed to his injury, he would receive a judgment against them jointly for $100,000. Armed with this judgment, Lopez would be entitled to execute on the assets of either defendant up to the full $100,000 value of the judgment. It would not be open to Smith, for example, to pay Lopez $50,000 and tell him to chase Jones for the rest; the meaning of joint and several liability is that Smith is liable for the entire judgment, even if others are liable as well. Nor could Smith argue that, because Jones was an independent cause of the accident, he (Smith) should be absolved of liability. Although he and Jones did not know each other and acted separately, they are jointly and severally liable if their independent tortious acts both contributed to an indivisible injury to Lopez.

Glannon, 85 Mass. L. Rev. at 50 (footnotes with citations omitted).

These common-law principles of joint and several liability were not affected by the relatively recent adoption of comparative negligence in Massachusetts. Prior to the enactment of the comparative negligence statute in 1969, a plaintiff's contributory negligence was a complete bar to recovery. The statute now requires comparison of the plaintiff's fault with the total percentage of fault attributable to all defendants, and allows the plaintiff to recover so long as he or she was less than 51% at fault:

Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made. In determining by what amount the plaintiff's damages shall be diminished in such a case, the negligence of each plaintiff shall be compared to the total negligence of all persons against whom recovery is sought. The combined total of the plaintiff's negligence taken together with all of the negligence of all defendants shall equal one hundred per cent.

Mass. Gen. Laws ch. 231, § 85.[5] *See Zeller v. Cantu*, 395 Mass. 76, 79 (Mass. 1985) ("Only if the plaintiff is found to be fifty-one per cent negligent will his recovery be barred."). Although the statute requires the jury to assign percentages of negligence to each defendant as well as to the plaintiff, the purpose of doing so is to ascertain what percentage of negligence should be apportioned to the plaintiff, so that her award of damages can be reduced by that percentage. *See Mitchell*, 647 N.E.2d at 84 ("The only significance of assigning percentages of fault [is] to determine whether the plaintiff [can] recover at all from the defendants collectively, and, if so, what percentage of her damages she [can] collect." (citing *Graci v. Damon*, 374 N.E.2d 311, 317 (Mass. App. Ct. 1978)). The comparative negligence statute, however, is

---

[5] In the context of this provision, the phrase "contributory negligence" refers, of course, to the *plaintiff's* contributory negligence, not that of the defendants or other non-party tortfeasors.

irrelevant to the apportionment of liability among joint tortfeasors. *Zeller v. Cantu*, 478 N.E.2d 930, 931–33 (Mass. 1985).

To further complicate matters, Massachusetts' statute pertaining to the right of contribution among joint tortfeasors, Mass. Gen. Laws ch. 231B, §§ 1–4, enacted in 1962, must also be taken into account. Under that law,

> (a) Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.
>
> (b) The right of contribution shall exist only in favor of a joint tortfeasor, hereinafter called tortfeasor, who has paid more than his pro rata share of the common liability, and his total recovery shall be limited to the amount paid by him in excess of his pro rata share. No tortfeasor shall be compelled to make contribution beyond his own pro rata share of the entire liability. . . .

Mass. Gen. Laws. ch. 231B, § 1. Different statutory provisions set forth the methods by which that right may be enforced. First, chapter 231 B, § 3(a) provides: "Whether or not judgment has been entered in an action against two or more tortfeasors for the same injury, contribution may be enforced by separate action." According to the Massachusetts Supreme Judicial Court, "[t]his section creates a separate cause of action for contribution, enabling a party to seek contribution from other alleged joint tortfeasors who were not joined as defendants in the original action." *Hopper Feeds, Inc. v. Cincinnati Milacron, Inc.*, 581 N.E.2d 1023, 1025–26 (Mass. 1991) (citing Hennessey, "Torts: Indemnity and Contribution," 47 Mass. L. Q. 421, 431 (1962)). Alternatively, where all joint tortfeasors are joined in a single action, chapter 231B, § 3(b) provides: "Where a judgment has been entered in an action against two or more tortfeasors for the same injury, contribution may be enforced in that action by judgment in favor of one against other judgment defendants by motion upon notice to all parties to the action." Under that provision, one tortfeasor can assert its contribution claims by motion against parties who were joined as defendants in the original action and against whom judgment has already been entered." *Hopper Feeds*, 581 N.E.2d at 1026 (citation omitted).

Taken together, and applied in light of Massachusetts' joint-and-several-liability scheme, "these statutes make clear that the negligence of a plaintiff is to be compared with the total negligence of all the defendants, all of whom are liable to the plaintiff, with contribution among the joint tortfeasors on a pro rata basis." *Correia v. Firestone Tire & Rubber Co.*, 446 N.E.2d 1033, 1037 (Mass. 1983) (internal

quotation marks and citation omitted).  As the courts have recognized, however, "pro rata" does not mean "in accordance with the percentage of fault attributed to that defendant."  Instead, pro rata means "equal share."  *See* Glannon, 85 Mass. L. Rev. at 63 ("Contribution shares are equal under the statute, even if the percentages of negligence of the different tortfeasors vary dramatically." (citing *Zeller v. Cantu*, 395 Mass. 76 (Mass. 1985)).

In other words, if for example a jury finds the plaintiff to have been 15% at fault for her injuries, and three defendants to have been, respectively, 40%, 40% and 5% responsible, the jury's total award will be reduced by 15% to reflect the amount of fault attributable to the plaintiff.  Each of the remaining defendants, including the defendant found to be less at fault than the plaintiff, will be jointly and severally liable for the full amount of the damages, and judgment in that amount will be entered against each of the defendants separately.  *See Graci v. Damon*, 374 N.E.2d 311, 313, 318 (Mass. App. Ct. 1978) (affirming judgment jointly and severally against each of three defendants under these circumstances).  The plaintiff can seek to enforce the judgment against any one of the defendants, and any defendant who pays more than its "pro rata" share may seek contribution from the others in a separate action.

Finally, and more importantly for our present purposes, the Massachusetts Supreme Judicial Court has recently construed the comparative fault provision to require attribution of fault for the plaintiff's injuries only among the "active participants at trial, *i.e.*, 'persons against whom recovery is sought' or 'defendants' . . . .  The statute does not direct the jury to apportion negligence among all tortfeasors who may have caused the injury, only those against whom recovery 'is' sought."  *Shantigar Found.*, 804 N.E.2d at 3329–30 (quoting Mass. Gen. Laws ch. 231, § 85).  *See also Allen v. Chance Mfg. Co.*, 873 F.2d 465, 467 (1st Cir. 1989) (under § 85, "a jury must apportion negligence between only the plaintiff and the defendant; the fault of non-parties . . . is not to be taken into account" (citing *Correia v. Firestone Tire & Rubber Co.*, 446 N.E.2d 1033, 1035–38 (Mass. 1983)).[6]

---

[6] The exception to that rule appears to be when the evidence is such that a jury might conclude that a non-party's conduct was the "sole proximate cause" of the plaintiff's injuries, in which event the defendant could not be held liable.  *See, e.g.*, *Allen v. Chance Mfg. Co.*, 873 F.2d 475. 467, 470 n.7 (1st Cir. 1989) (holding that, ordinarily, "the fault of non-parties . . . is not to be taken into account," but that the district court had erred in refusing to allow the defendant to instruct the jury or to make an argument at closing regarding the "sole proximate cause" theory in a situation where the defendant was not able implead or to bring a contribution action against the non-party employer).

### D. The Plaintiff's Motion

The Court observes that Massachusetts law of joint and several liability is completely different from the comparative negligence scheme that applies in Tennessee and most other states, and this Court does not profess to completely understand Massachusetts' regime. It nonetheless appears clear that, under Massachusetts law, a jury cannot be asked to apportion fault to a non-party. Likewise, AIW would not have the right to offset whatever damages might be awarded by the percentage of fault attributable to Oliveira. Rather than making a ruling to that effect, however, the Court finds that it should reconsider the question of whether transfer to a district wherein David Oliveira is subject to personal jurisdiction is warranted. Because, as set forth below, the Court will transfer this matter, it will defer ruling on the comparative fault issue and leave that for the Rhode Island court to resolve, likely in the context of resolution of the issue of whether AIW should be permitted to implead Oliveira.

## II. RECONSIDERATION OF WHETHER TRANSFER IS WARRANTED

The Court denied the defendants' first motion to change venue in June 2008, based upon its finding that the defendants had not shown that the relevant public and private interests strongly favored transfer to Rhode Island. (*See* June 10, 2008 Order, Doc. No. 18.) In February 2009, the Court denied AIW's renewed motion to transfer venue, finding at that point that the question of whether transfer was warranted was a "very close call" but that only one factor—the convenience of witnesses—weighed strongly in favor of transfer, while the plaintiff's interest in prompt resolution of the matter and litigating in its chosen forum weighed strongly in favor of denying the motion. The other relevant factors were either neutral or weighed slightly in favor of denying the motion to transfer. (*See* Feb. 13. 2009 Order, Doc. No. 82.)

As part of its determination, the Court noted that it was likely as well equipped as the Rhode Island court to apply Massachusetts law. Having now had the opportunity to study Massachusetts' law of comparative fault and joint and several liability, the Court reconsiders that assessment and finds that Rhode Island is likely much better equipped to interpret and apply a statutory scheme that is very similar to its own but entirely foreign to this Court.

Moreover, although it remains true that a joint tortfeasor is generally not an indispensible party and that upon transfer, the process for attempting to bring Oliveira into the action pursuant to Rule 14 is

likely to be protracted and hotly litigated, the Court now finds that it previously underestimated the "David Oliveira factor" when it held that it was "somewhat ambivalent" in terms of whether it weighed in favor of transfer or not transferring.  (*See* Doc. No. 82, at 9.)  The Court has now held that there is a disputed issue of fact as to whether Oliveira was negligent and as to whether his negligence contributed to Big G's injury.  In addition, it now appears that AIW could be substantially prejudiced by its inability to implead Oliveira in this district given Massachusetts' joint-and-several liability regime.  As indicated above, if AIW is found liable for Big G's damages but Oliveira is not a party to the proceedings, AIW would not be able to seek contribution from Oliveira unless it first pays the entire amount of the damages assessed (minus any portion attributable to the plaintiff) and then brings a separate contribution action against Oliveira.  In other words, in addition to the witnesses' convenience, it appears judicial economy may be furthered if AIW is able to implead Oliveira and resolve this dispute in one proceeding.  The Court further finds that these factors, taken together, outweigh the plaintiff's continued interest in litigating this matter in Tennessee and resolving it promptly.[7]  In sum, although no "new circumstances" have arisen since the Court last considered this issue, as Big G points out, the Court now has a better understanding of the applicable statutory regime and finds that the interests of justice and judicial economy weigh strongly in favor of transfer.

III.    **CONCLUSION**

For the reasons set forth above, the Court will enter an Order deferring resolution of the comparative fault question and transferring this matter to the United States District Court for the District of Rhode Island.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[7] The Court notes that the scorched-earth litigation tactics of both parties are not conducive to speedy and inexpensive resolution of this matter.